# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW JAMES GRIFFIN,<br><br>Plaintiff,<br><br>v.<br><br>A. JOHNSON, et al.,<br><br>Defendants. | Case No. 1:13-cv-01599-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT DANIEL GONZALES' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT<br><br>(ECF No. 141)<br><br>**Fourteen (14) Day Deadline** |

**Findings and Recommendations**

**I.     Introduction**

Plaintiff Matthew James Griffin ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's claims of excessive force and deliberate indifference to serious medical needs in violation of the Eighth Amendment against Defendants Johnson, Gonzales, Valdez, Munoz, Sexton, Ross, Thor, Doe, Kul, Busch, Bell, and Smith.

Currently before the Court is Defendant Daniel Gonzales' motion for summary judgment, filed on December 12, 2016, pursuant to Federal Rule of Civil Procedure 56.[1]  (ECF No. 141.)

---
[1]     Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 141.) See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

1

Plaintiff opposed the motion on February 27, 2017, which included a request for deferral of the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). (ECF Nos. 147, 148, 149.) Defendant Gonzales replied on March 20, 2017. (ECF No. 155.) Defendant Gonzales' motion is deemed submitted. Local Rule 230(l).

Having considered the moving, opposition and reply papers, the Court recommends that Plaintiff's request for deferral pursuant to Rule 56(d) be denied and that Defendant Gonzales' motion for summary judgment be granted in part and denied in part.

## II. Plaintiff's Request for Rule 56(d) Deferral

In his opposition, Plaintiff requests that the Court defer ruling on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d)(1). As the basis of his motion, Plaintiff asserts that Defendants are resisting discovery and he filed a motion to compel discovery, citing ECF No. 114. Plaintiff requests that the Court defer ruling on the motion for summary judgment until after resolution of his pending motion to compel. (ECF No. 147 at pp. 1-5.)

Pursuant to Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Plaintiff bears the burden under Rule 56(d) of specifically identifying relevant information, and demonstrating that the evidence sought actually exists and that it would prevent summary judgment. Blough v. Holland Realty, Inc., 574 F.3d 1084, 1091 n. 5 (9th Cir. 2009) (citation omitted); Tatum v. City and County of San Francisco, 441 F.3d 1090, 1100–01 (9th Cir. 2006). Additionally, Plaintiff must make some showing of diligence, that he sought the requested information during the discovery period, or that there is good reason he has not been able to obtain the information before now. See Landmark Dev. Corp. v. Chambers Corp., 752 F.2d 369, 372–73 (9th Cir. 1985).

The Court will recommend that Plaintiff's request for deferral under Rule 56(d) be denied for several reasons. First, Plaintiff's motion to compel discovery is not directed to Defendant Gonzales. Instead, Plaintiff's motion seeks to compel further discovery responses from

Defendant Sexton. (ECF No. 114.) Second, the Court finds that Plaintiff has not met his burden under Rule 56(d) to identify any relevant information that exists and that would prevent summary judgment. Plaintiff merely identifies the categories of discovery sought and contends that "these items are calculated to lead to the discovery of admissible evidence" to oppose the motion for summary judgment and prepare for trial. (ECF No. 147 at pp. 4-5). However, Plaintiff has not shown that additional discovery would reveal specific facts precluding summary judgment. Tatum, 441 F.3d at 1101. Third, and finally, Plaintiff has not made the requisite showing of diligence. After Defendant Gonzales filed the instant motion for summary judgment, Plaintiff requested an extension of time to oppose the motion, which was granted by the Court. (ECF Nos. 143, 145.) Nowhere in that motion did Plaintiff indicate that additional time was needed to respond to the motion for summary judgment because the Court had not yet ruled on his motion to compel or that the documents sought by that motion were critical to his ability to defend against the motion for summary judgment.

Accordingly, for these reasons, the Court will recommend that Plaintiff's motion to delay or otherwise continue the motion for summary judgment pursuant to Rule 56(d) be denied.

**III.     Defendant Gonzales' Motion for Summary Judgment**

By this motion, Defendant Gonzales argues he is entitled to summary judgment because Plaintiff cannot present sufficient evidence to create a triable issue of fact as to one or more of the essential elements of his claims for excessive force and deliberate indifference to medical needs in violation of the Eighth Amendment.

Alternatively, Defendant Gonzales moves for partial summary judgment and seeks summary adjudication regarding the following:

1.     With respect to Gonzales, plaintiff cannot present sufficient evidence to create a triable issue of fact as to one or more of the essential elements of the First Cause of Action in plaintiff's First Amended Complaint for alleged Excessive Force.

2.     With respect to Gonzales, plaintiff cannot present sufficient evidence to create a triable issue of fact as to one or more of the essential elements of the Second Cause of Action in plaintiff's First Amended Complaint for alleged

3

Deliberate Indifference to Claimed Medical Need.

3. Gonzales was not involved in the planning of the use of pepper spray for the cell extraction that took place on May 23, 2012.

4. Gonzales did not actually use pepper spray for the extraction.

5. Prior to the extraction, plaintiff did not ask Gonzales to move him from his cell because of his concern about being exposed to pepper spray.

6. After the extraction, plaintiff did not ask Gonzales to arrange for him to receive medical treatment and a decontamination shower because of the symptoms from which plaintiff claims he was suffering due to the pepper spray.

7. If it is found that plaintiff gave Gonzales two written requests for medical treatment in connection with the May 23, 2012 incident, Gonzales timely submitted them to CDCR medical staff who was responsible for processing them and arranging for any necessary care.

(ECF No. 141 at pp. 1-2.)

### A. Evidentiary Objections

Defendant Gonzales raises multiple objections to Plaintiff's evidence, which the Court has carefully reviewed. (ECF No. 156.) Generally, it is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment. However, given the extensive nature of these objections, the Court will address several evidentiary issues raised by Defendant Gonzales.

As an initial matter, Defendant Gonzales objects to portions of Plaintiff's declaration as lacking in foundation and irrelevant. These objections are without merit and are overruled. In relevant part, Plaintiff's declaration, signed under penalty of perjury, describes what he observed, including what he saw Defendant Gonzales do during the relevant time period and conversations he had with Defendant Gonzales. (ECF No. 147, Declaration of Plaintiff ("Plaintiff's Declaration") at ¶¶ 9, 12, 13, 14.) This information is neither irrelevant nor lacking in foundation.

Defendant Gonzales also objects to Plaintiff's citation to his own answers to interrogatories. A plaintiff's discovery responses generally are not proper "evidence" to establish a genuine dispute of material fact. See Carter v. Clark County, 459 Fed.Appx. 635, 636 (9th Cir.

2011) (unpublished) (refusing to find a genuine issue where plaintiff "submitted only his vague, conclusory answers" to defendant's interrogatories); S & S Logging Co. v. Baker, 366 F.2d 617, 624 n.7 (9th Cir. 1966) (finding plaintiff's responses to interrogatories to be insufficient to challenge defendant's assertions of fact on summary judgment, because the responses were self-serving, inadmissible as evidence, and not based on personal knowledge). Here, however, Plaintiff's interrogatory responses are verified, signed under penalty of perjury and based in part on his personal knowledge. (ECF No. 147, Ex. 2.) Accordingly, the Court will consider Plaintiff's discovery responses as a form of declaration, where the responses are based on his personal knowledge, for purposes of summary judgment. Fed. R. Civ. P. 56(c)(1).

### B. Defendant's Separate Statement of Facts (DSF)[2]

1. Plaintiff's First Cause of Action for alleged excessive force against defendant Daniel Gonzales ("Gonzales") is based on the allegation that, on or about May 23, 2012, Gonzales and the other defendants planned to use pepper spray to extract an inmate in a cell near the cell where plaintiff was housed in a manner intended to harm other inmates who were housed nearby, including plaintiff. (ECF No. 23, First Amended Complaint ("FAC") ¶¶ 22, 27, 46, 47, 49-51, 54, 75 and 77.)

2. Plaintiff's First Cause of Action for alleged excessive force against defendant Gonzales is based on the allegation that, on or about May 23, 2012, Gonzales actually used pepper spray for the extraction in a manner that harmed plaintiff. FAC ¶¶ 22, 28, 42, 46, 47, 49-51, 54, 75 - 77.

3. Plaintiff's First Cause of Action for alleged excessive force against defendant Gonzales is based on the allegation that, prior to the extraction on or about May 23, 2012, plaintiff asked Gonzales to move him from his cell because of his concern about being exposed to pepper spray, but he refused. FAC ¶¶ 31, 32, 75 and 77.

4. Plaintiff's Second Cause of Action for alleged deliberate indifference to plaintiff's claimed medical need against defendant Gonzales is based on the allegation that, after the

---

[2] These undisputed facts are derived from Defendant Gonzales' "Separate Statement of Undisputed Material Facts." (ECF Nos. 141-2.)

extraction on or about May 23, 2012, plaintiff asked Gonzales to arrange for him to receive medical treatment and a decontamination shower because of the symptoms from which plaintiff claims he was suffering due to the pepper spray, but he refused. FAC ¶¶ 59, 83, 87, 88 and 90.

5. Plaintiff's Second Cause of Action for alleged deliberate indifference to plaintiff's claimed medical need against defendant Gonzales is based on the allegation that, after the extraction on or about May 23, 2012, plaintiff gave Gonzales two written requests for medical treatment for the aforementioned symptoms, but he failed to submit them to CDCR medical staff and log them into plaintiff's medical records. FAC ¶¶ 62, 63, 83.

6. As an LVN, Gonzales had no involvement in, or responsibility for, planning cell extractions and/or determining the use of force to be used in order to effectuate cell extractions which was done by CDCR custodial staff members, not medical staff members. (ECF No. 141-3, Declaration of Daniel Gonzales ("Gonzales Decl.") at ¶ 4.)

7. Gonzales was never involved in carrying out, or assisting in carrying out, cell extractions and/or the use of force, including pepper spray which was done by CDCR custodial staff members, not medical staff members. (Id.)

8. Gonzales did not plan or carry out, nor could he have planned or carried out, the cell extraction and/or use of force that occurred on May 23, 2012, upon which plaintiff's FAC is based. (Id.)

9. As an LVN, Gonzales had no involvement in, or responsibility for, communicating with inmates in order to determine if they wanted to be moved from their cell before a cell extraction planned for a nearby cell was carried out which was done by CDCR custodial staff members, not medical staff members. (Id. at ¶ 5.)

10. Plaintiff was housed in SHU and was confined to his cell, except for a daily visit to the exercise yard. (Id.)

11. Gonzales worked in the prison health clinic at Corcoran prison which is not close to the yard. (Id.)

12. The only circumstance where Gonzales would be close enough to plaintiff's cell to communicate with him would be when he performed a "med pass" during which he passes out

1 | medications to inmates. (Id.)

2 |     13.    Gonzales' shift on May 23, 2012 started at 2:00 p.m., but the extraction commenced around 3:30 p.m. (Id.)

    14.    Gonzales performed med passes at 4:00 p.m. and 8 p.m. and would not have had an opportunity to perform a med pass prior to the extraction. (Id.)

    15.    Gonzales was not in a position whereby plaintiff would have had an opportunity to ask him, prior to the extraction, to move plaintiff from his cell. (Id.)

    16.    Gonzales has no recollection of plaintiff ever asking him, prior to the extraction, to move plaintiff from his cell. (Id.)

    17.    In May of 2012, CDCR inmates could make a request for medical care by way of the inmate filling out, signing and submitting a Healthcare Services Request Form. (Id. at ¶ 6.)

    18.    If plaintiff request medical treatment, including but not limited to decontamination, in connection with the May 23, 2012 incident, he would have done so pursuant to the procedure of filling out, signing and submitting to CDCR staff a Healthcare Services Request Form. (Id.)

    19.    It was Gonzales' custom and practice that, at any time an inmate submitted a Healthcare Services Request Form to him, he forwarded it forthwith to the triage nurse at the prison hospital. (Id.)

    20.    The triage nurse was then responsible for arranging for any needed care. (Id.)

    21.    Once submitted to the triage nurse, an LVN such as Gonzales had no further responsibility to process the request, arrange for treatment or ensure that the Request form was filed in the inmate's medical records. (Id.)

    22.    To the best of his recollection, Gonzales complied with his custom and practice during all relevant times alleged by plaintiff. (Id.)

    23.    At no time did Gonzales act with a malicious and/or sadistic intent towards plaintiff for the purpose of causing him harm. (Id.)

    24.    Gonzales never was deliberately indifferent to plaintiff's claimed medical needs in connection with a claimed serious injury or medical condition allegedly suffered by him. (Id.)

### C. Plaintiff's Statement of Facts (PSF)[3]

1. On May 25, 2012, Defendant Gonzales told Plaintiff that he (Gonzales), in consultation with a doctor (whom he did not identify), had approved the use of chemical weapons on May 23, 2012. (Plaintiff's Decl. at ¶ 9.)

2. Contrary to the assertions of Defendant Gonzales, there are many reasons other than exercise for which plaintiff and/or other inmates may leave their cell in the security housing unit (SHU) including, but not limited to: law library, medical call outs, outside transports, court, showers, psychiatric call outs, group therapy, work (e.g., shower cleaners), and other call outs for administrative, disciplinary or classification hearings. (Id. at ¶ 10.)

3. On May 23, 2012, two (2) other prisoners (other than Plaintiff) were evacuated from their cells prior to the use of chemical weapons. (Id. at ¶ 11.)

4. Plaintiff has personally observed Defendant Gonzales working in the 4A Prison Health Clinic, which is co-located on the 4A Yard with Building 4A-4R where Plaintiff resided and where the May 23, 2012 use of force occurred. The prison health clinic is close to the 4A yard and building 4A-4R all are regularly walked to by plaintiff and prison staff and all are contained within the same fenced area. (Id. at ¶ 12.)

5. Defendant Gonzales was personally present in Building 4A-4R of the California State Prison at Corcoran when Plaintiff spoke to him on May 23, 2012. (Id. at ¶ 13.)

6. On May 23, 2012, Defendant Gonzales was personally present in Building 4A-4R of the California State Prison at Corcoran before the use of chemical agents, during the use of chemical agents, and after the use of chemical agents. Plaintiff personally spoke with Defendant Gonzales at his cell front (4A-4R-28) both before and after the use of chemical weapons within 4A-4R-B section on May 23, 2012. (Id. at ¶ 14.)

7. A licensed vocational nurse (LVN) on duty at the California State Prison Corcoran has a duty to respond to medical emergencies that they are informed of and arrange or provide medical treatment or transfer the care of the prisoner patient to an appropriate health care

---

[3] These facts are derived from "Plaintiff's Fourth Declaration in Support of His Motions, Inter Alia" (hereinafter "Plaintiff's Decl."). (ECF No. 147 at pp. 11-21.) Immaterial and irrelevant facts are omitted.

provider. (Id. at ¶ 15.)

**D. Legal Standard**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id. at 929; see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**E**. **Discussion**

    **1.** **Excessive Force**

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v.McMillian, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013).

Defendant Gonzales contends that as an LVN, he had no involvement in, or responsibility for, communicating with inmates in order to determine if they wanted to be moved from their cell before a cell extraction planned for a nearby cell was carried out which was done by CDCR custodial staff members, not medical staff members. (DSF 9.) He also was not in a position

10

whereby Plaintiff would have had an opportunity to ask him, prior to the extraction, to move Plaintiff him from his cell, and he has no recollection of Plaintiff ever asking him, prior to the extraction, to be moved from his cell. (DSF 15, 16.)

Defendant Gonzales further asserts that as an LVN, he had no involvement in, or responsibility for, planning cell extractions and/or determining the use of force to be used in order to effectuate cell extractions which were done by CDCR custodial staff members, not medical staff members. (DSF 6.) He was never involved in carrying out, or assisting in carrying out, cell extractions and/or the use of force, including pepper spray which was done by CDCR custodial staff members, not medical staff members. (DSF 7.) And he did not plan or carry out, nor could he have planned or carried out, the cell extraction and/or use of force that occurred on May 23, 2012, upon which Plaintiff's FAC is based. (DSF. 8.)

Plaintiff attempts to raise a genuine dispute of material fact by asserting that on May 23, 2012, Defendant Gonzales was personally present in Building 4A-4R before, during and after the use of chemical agents, Plaintiff personally spoke to Defendant Gonzales at his cell front both before and after the use of chemical weapons on May 23, 2012, and two days later, on May 25, 2012, Defendant Gonzales told Plaintiff that he and a doctor had approved the use of chemical weapons on May 23, 2012. (PSF 1, 5, 6.) Plaintiff also contends that he asked Defendant Gonzales to evacuate him from his cell or order his evacuation to a safe area prior to the extraction on May 23, 2012, but Defendant Gonzales refused. (ECF No. 148 at pp. 9, 18; ECF No. 147 at Ex. 2, Answer to Interrogatory 1 and 2, 6.) However, even if these statements are accepted as true, Plaintiff has not provided affirmative evidence that Defendant Gonzales actively participated in the cell extraction at issue. In other words, there is no evidence that Defendant Gonzales used any force on May 23, 2012.

Assuming further that Defendant Gonzales approved the use of chemical weapons for May 23, 2012 and refused to evacuate Plaintiff, the cell extraction at issue concerned another inmate, not Plaintiff. There is no indication that Defendant Gonzales was knowledgeable about the use of chemical weapons, that he would have any indication that Plaintiff would be effected by such use or that he was responsible for or had the authority to remove an inmate from his

11

assigned cell. Plaintiff also has not provided affirmative evidence that Defendant Gonzales was involved in the determination of the level of force or amount of pepper spray to be used in the cell extraction that took place on May 23, 2012.

In the absence of a genuine dispute of material facts, the Court finds that Defendant Gonzales is entitled to summary judgment on Plaintiff's claim of excessive force.

### 2. Deliberate Indifference to Medical Needs

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo Cty. Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, Jett, 439 F.3d at 1096.

Following the extraction, if Plaintiff requested medical treatment, including but not limited to decontamination, in connection with the May 23, 2012 incident, he would have done so pursuant to the procedure of filling out, signing and submitting to CDCR staff a Healthcare Services Request Form. (DSF 18.) It was Defendant Gonzales' custom and practice that any time an inmate submitted a Healthcare Services Request Form to him, he forwarded it forthwith to the triage nurse at the prison hospital and the triage nurse was then responsible for arranging for any needed care. (DSF 19, 20.) Thereafter, Defendant Gonzales would have no further responsibility for treatment. (DSF 21.) To the best of his recollection, Defendant Gonzales complied with his

12

custom and practice during all relevant times alleged by Plaintiff. (DSF 22.)

Plaintiff counters that he needed decontamination from harmful chemical agents and treatment for the dislocation of his shoulder. (ECF No. 148 at p. 22.) He personally reported his injuries and need for medical care to Defendant Gonzales and filled out and submitted Health Services Request Forms, but Defendant Gonzales refused to provide him with a decontamination shower or medical care. (ECF No. 148 at p. 19; ECF No. 147, Ex. 2 Answer to Interrogatories Nos. 6 and 7). Plaintiff further contends that he gave Defendant Gonzales two of these written forms, neither of which was filed in his health care record, and that Defendant Gonzales knew that the failure to provide him treatment would result in further significant injury or the unnecessary infliction of pain. (ECF No. 148 at pp. 21, 26; ECF No. 147, Ex. 2 Answer to Interrogatory No. 7.)

The Court finds that Plaintiff has raised a genuine dispute regarding whether Defendant Gonzales was deliberately indifferent to his medical needs following the cell extraction. This dispute is based on the parties' conflicting statements of events, the credibility of which cannot be determined by the Court on summary judgment. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1115 n. 5 (9th Cir. 2004) ("[W]hen ruling on a summary judgment motion, the district court is not empowered to make credibility determinations or weigh conflicting evidence.") (citations omitted). Accordingly, the Court will recommend that Defendant Gonzales' motion for summary judgment on Plaintiff's deliberate indifference claim be denied.

### IV. Conclusion and Recommendations

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant Gonzales' motion for summary judgment, filed on December 12, 2016, be GRANTED IN PART and DENIED IN PART as follows:

1. Defendant Gonzales' motion for summary judgment on Plaintiff's claim of excessive force be granted; and
2. Defendant Gonzales' motion for summary judgment on Plaintiff's claim of deliberate indifference to medical needs be denied.

These Findings and Recommendations will be submitted to the United States District

Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 11, 2017**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE